**UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| LASHONDA YOUNGBLOOD, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | Case No. 10-CV-0378-CVE-PJC |
| | ) | |
| TCIM SERVICES, INC., | ) | |
| | ) | |
| **Defendant.** | ) | |

<u>OPINION AND ORDER</u>

Now before the Court is Defendant's Motion for Partial Dismissal of Plaintiff's First Amended Complaint, with Brief in Support (Dkt. # 18). Defendant TCIM Services, Inc. (TCIM) argues that plaintiff has failed to state claims for intentional infliction of emotional distress and fraud. Plaintiff responds that she has alleged sufficient facts to support these claims and, if she has not, she requests leave to file a second amended complaint re-alleging these claims.

**I.**

Plaintiff LaShonda Youngblood is an African-American female who was formerly employed two separate times by TCIM. Her first employment with TCIM began in approximately November 2006 and ended in approximately February 2007. Dkt. # 15, at 3. Plaintiff states that she has a "felony background" and disclosed this before her first period of employment with TCIM, and that TCIM "receives remuneration from federal and state governments, as well as through other organizations and grants, upon hiring former felons." Id. Plaintiff claims that she was subject to sexual harassment by her supervisors, Byron Hopkins and Michael Barnes, and she resigned after TCIM failed to take any action to prevent the sexual harassment. Id. at 4.

Plaintiff claims that TCIM contacted her in January 2008 and offered her a job in which she would not have to work with Hopkins or Barnes. Id. She claims that TCIM did not ask her to complete another employment application. Id. During her second period of employment with TCIM, plaintiff's supervisor was Robyn Goff and Goff's supervisor was Steven Ashley. Id. Plaintiff claims that she frequently interacted with Ashley and that he was "very flirtatious" with plaintiff. Id. She alleges that Ashley looked at her in a suggestive manner and "asked if her boyfriend was 'doing [her] right.'" Id. According to plaintiff, Ashley's harassment became more aggressive and he repeatedly tried to touch plaintiff inappropriately. Id. at 5. She also alleges that Ashley exposed his genitals to plaintiff on multiple occasions. Id. Plaintiff reported Ashley's behavior to Goff and she claims that Goff took no action on her claims of sexual harassment. Id. Plaintiff missed a day of work in the summer of 2008 and was counseled by Goff for her unexcused absense, and she allegedly told Goff that she did not want to come to work and deal with Ashley. Id.

In December 2008, plaintiff went to Ashley's office to discuss incentives for her team, and Ashley asked her to close his office door. Plaintiff claims that Ashley again exposed his genitals to her and she threatened to "tell" on him. Id. Ashley allegedly responded that "[w]e'll see how far that goes." Id. Plaintiff claims that she reported the incident to Goff and Goff refused to talk to Ashley about his behavior. Id. at 6. Plaintiff reported Ashley's conduct to the human resources department and she claims that TCIM refused to file a written complaint concerning her allegations. Id. TCIM terminated plaintiff's employment around December 31, 2008 and she was told that she was terminated due to her background. Id. She claims that TCIM had been aware of her criminal history since 2006 and this reason was pretext for unlawful discrimination.

Plaintiff states that she filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC), and received a right to sue letter on March 15, 2010. Dkt. # 2, at 1. On June 11, 2010, plaintiff filed this case, alleging claims under federal anti-discrimination laws. Id. at 1-10. The parties attempted to resolve this case through early settlement negotiations, and the case was stayed. Dkt. # 8. The case did not settle and plaintiff filed a first amended complaint (Dkt. # 15) alleging the same federal employment discrimination claims, and adding state law claims of wrongful termination in violation of an Oklahoma public policy, fraud, and intentional infliction of emotional distress. Plaintiff relied on the same factual allegations for her intentional infliction of emotional distress claim that she used to support her employment discrimination claims. Dkt. # 15, at 12. In support of her fraud claim, plaintiff alleges that TCIM intentionally made two false statement to induce plaintiff to accept employment with TCIM:

> 53.     Prior to employing Plaintiff, Defendant agreed and represented to Plaintiff that her prior felony conviction would neither impede her continued employment nor deprive her of the employment opportunities available to other employees.

> 54.     Prior to employing Plaintiff, Defendant represented itself as, and held itself out to be, an equal opportunity employer that would not terminate or discriminate against employees on the basis of race.

Id. at 11. Plaintiff does not specifically identify when these statements were made or who made the statements to her.

**II.**

In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court must determine whether the claimant has stated a claim upon which relief may be granted. A motion to dismiss is properly granted when a complaint provides no "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555

(2007).  A complaint must contain enough "facts to state a claim to relief that is plausible on its face" and the factual allegations "must be enough to raise a right to relief above the speculative level."  Id. (citations omitted).  "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint."  Id. at 562.  Although decided within an antitrust context, Twombly "expounded the pleading standard for all civil actions."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1953 (2009).  For the purpose of making the dismissal determination, a court must accept all the well-pleaded allegations of the complaint as true, even if doubtful in fact, and must construe the allegations in the light most favorable to claimant.  Twombly, 550 U.S. at 555; Alvarado v. KOB-TV, L.L.C., 493 F.3d 1210, 1215 (10th Cir. 2007); Moffett v. Halliburton Energy Servs., Inc., 291 F.3d 1227, 1231 (10th Cir. 2002).  However, a court need not accept as true those allegations that are conclusory in nature.  Erikson v. Pawnee County Bd. Of County Comm'rs, 263 F.3d 1151, 1154-55 (10th Cir. 2001).  "[C]onclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based."  Hall v. Bellmon, 935 F.2d 1106, 1109-10 (10th Cir. 1991).

### III.

TCIM asks the Court to dismiss for failure to state a claim plaintiff's claims of intentional infliction of emotional distress and fraud.  Dkt. # 18, at 1.  Plaintiff responds that she alleged adequate facts to state a plausible claim for intentional infliction of emotional distress, and she has pled her fraud claim with sufficient particularity to satisfy the pleading requirements of Fed. R. Civ. P. 9(b).  Dkt. # 19, at 3, 12.

**A.**

Defendant argues that plaintiff has failed to allege fraud with particularity, because the first amended complaint contains only vague allegations supporting plaintiff's fraud claim. Dkt. # 18, at 5-7. Plaintiff responds that her allegations give defendant sufficient notice of the contents of the alleged fraudulent statements and she has "substantially complied" with Rule 9(b). Dkt. # 19, at 12-14.

Under Rule 9(b), "a party must state with particularity the circumstances constituting fraud or mistake." This is a heightened pleading requirement and, "[a]t a minimum, Rule 9(b) requires that a plaintiff set forth the 'who, what, when, where and how' of the alleged fraud." United States ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah, 472 F.3d 702, 726-27 (10th Cir. 2006) (quoting Thompson v. Columbia/HCA Healthcare Corp., 125 F.3d 899, 903 (5th Cir. 1997)). The Tenth Circuit also "requires a complaint alleging fraud to 'set forth the time, place and contents of the false representation, the identity of the party making the false statement and the consequences thereof.'" Koch v. Koch Indus., Inc., 203 F.3d 1202 (10th Cir. 2000) (quoting Lawrence Nat'l Bank v. Edmonds, 924 F.2d 176, 180 (10th Cir. 1991)).

The first amended complaint contains two allegations describing the false statements forming the basis for plaintiff's fraud claim:

> 53.    Prior to employing Plaintiff, Defendant agreed and represented to Plaintiff that her prior felony conviction would neither impede her continued employment nor deprive her of the employment opportunities available to others.

> 54.    Prior to employing Plaintiff, Defendant represented itself as, and held itself out to be, an equal opportunity employer that would not terminate or discriminate against employees on the basis of race.

5

Dkt. # 15, at 11. Plaintiff claims that these allegations inform defendant that the statements were made between November 2006 and January 2007, because she was originally hired by defendant during this time frame. Dkt. # 19, at 14. However, plaintiff worked for defendant during two separate periods of time and it is unclear what period of employment plaintiff is referencing in the complaint. Plaintiff also fails to identify the speaker and this is a critical fact. If the speaker was not authorized by defendant to make these representations, the statements may not be binding on defendant and plaintiff may not have a fraud claim against defendant. It is also unclear from plaintiff's allegations if the alleged statements were made as positive assertions, which could give rise to a fraud claim under Oklahoma law, or merely general statements from which plaintiff inferred certain matters to be true. See Bowman v. Presley, 212 P.3d 1210 (Okla. 2009) (an essential element of a fraud claim is that the defendant make a false material statement in the form of a positive assertion). Plaintiff's fraud claim should be dismissed, but she will be granted leave to file a second amended complaint if she can reallege her fraud claim in compliance with Rule 9(b).[1]

**B.**

Defendant argues that plaintiff's intentional infliction of emotional distress claim should be dismissed due to plaintiff's failure to plausibly allege that defendant's conduct was extreme and outrageous or that plaintiff suffered severe emotional distress. Plaintiff responds that her allegations concerning her supervisor's conduct are sufficient to plead the extreme and outrageous conduct

---

[1]    Although defendant's motion is solely based on plaintiff's non-compliance with Rule 9(b), the Court has independently researched whether an employer can be held liable for fraud merely by holding itself out as an equal opportunity employer in compliance with federal or state law. The Court has found no cases recognizing such a claim and it is not clear that an employer's general statement that it complies with anti-discrimination laws is sufficient to give rise to a fraud claim under Oklahoma law.

element of an intentional infliction of emotional distress claim, and she may generally allege extreme emotional distress at the pleading stage.

Oklahoma courts have recognized a cause of action for intentional infliction of emotional distress, also known as the tort of outrage. See Gaylord Entertainment Co. v. Thompson, 958 P.2d 128, 149 (Okla. 1998). The action is governed by the narrow standards laid out in the Restatement Second of Torts, § 46. Id. In Breeden v. League Services Corp., 575 P.2d 1374 (Okla. 1978), the Oklahoma Supreme Court explained:

> Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!' The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.

Id. at 1376. To state a claim, a plaintiff must allege that "(1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's conduct caused the plaintiff emotional distress; and (4) the resulting emotional distress was severe." Schovanec v. Archdiocese of Oklahoma City, 188 P.3d 158, 175 (Okla. 2008) (quoting Computer Publ'ns, Inc. v. Welton, 49 P.3d 732, 735 (Okla. 2002)). Under Oklahoma law, the trial court must assume a "gatekeeper role" and make an initial determination that the defendant's conduct "may be reasonably regarded as sufficiently extreme and outrageous to meet the Restatement § 46 standards." Trentadue v. United States, 397 F.3d 840, 856 n.7 (10th Cir. 2005) (applying Oklahoma law). If reasonable persons could reach differing conclusions in the assessment of the disputed facts, the Court should submit the claim to the jury to determine whether the defendant's conduct could result

in liability.  Id. The Court is to make a similar threshold determination with regard to the fourth

prong, the presence of severe emotional distress.  Id.

In cases arising out of the workplace, Oklahoma appellate courts have found that a defendant

engaged in extreme and outrageous conduct only when that defendant intentionally and persistently

engaged in a course of conduct that harmed the plaintiff.  See Computer Publ'ns, 49 P.3d at 736

(claim should have been submitted to a jury when plaintiff presented evidence that harassment lasted

more than two years and caused plaintiff to quit her job, move, and repeatedly change phone

numbers); Miner v. Mid-America Door Co., 68 P.3d 212 (Okla. Civ. App. 2002) (employer's alleged

failure to reassign the plaintiff after learning of workplace harassment, even if unreasonable, was

not extreme and outrageous); Gabler v. Holder & Smith, Inc., 11 P.3d 1269 (Okla. Civ. App. 2000)

(noting that workplace harassment rarely rises to the level of extreme and outrageous conduct);

Mirzaie v. Smith Cogeneration, Inc., 962 P.2d 678 (Okla. Civ. App. 1998) (employer's conduct was

not extreme and outrageous when, inter alia, the plaintiff's manager made derogatory sexual remarks

about the plaintiff, woke plaintiff up in the middle of the night to do unnecessary work, and

terminated him two hours before his wedding); Zahorsky v. Community Nat'l Bank of Alva, 883

P.2d 198 (Okla. Civ. App. 1994) (employer not liable for intentional infliction of emotional distress

when an employee forced the plaintiff to have sex with him and employer failed to fire the

employee, even though the employer allegedly knew about the conduct).

The Court finds that plaintiff has alleged sufficient facts to state the extreme and outrageous

conduct element of a claim of intentional infliction of emotional distress.  Plaintiff alleges that her

supervisor, Ashley, repeatedly exposed his genitals to her. Dkt. # 15, at 4-5.  She claims that she

told Ashley's supervisor, Goff, about Ashley's behavior at least twice, and Goff refused to take any

action. Id. She also alleges that TCIM's human resources department refused to file a sexual harassment complaint and openly tolerated Ashley's conduct. Id. at 6. She alleges that TCIM retaliated against her for reporting sexual harassment by terminating her employment. Id. Defendant is correct that Oklahoma courts rarely allow intentional infliction of emotional distress claims to proceed to trial, but the allegations of plaintiff's first amended complaint are sufficient to state a plausible claim that defendant's conduct was extreme and outrageous.

Even though the extreme and outrageous conduct element has been adequately alleged, plaintiff's conclusory allegations of severe emotional distress are not sufficient under Twombly, and plaintiff's reliance on Rule 9(b) to generally allege "conditions of a person's mind" is misplaced. Rule 9(b) states that "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." However, this rule allows a party to make general allegations about the opposing party's state of mind only, because the opposing party's state of mind is matter exclusively within the knowledge of the opposing party. Phelps v. Wichita Eagle-Beacon, 886 F.2d 1262, 1269-70 (10th Cir. 1989); Cordova v. Vaughn Mun. Sch. Dist. Bd of Educ., 3 F. Supp. 2d 1216 (D.N.M. 1998); Caliber Partners, Ltd. v. Affeld, 583 F. Supp. 1308, 1311 (N.D. Ill. 1984). In this case, plaintiff is the only party with knowledge of her own state of mind and with knowledge of facts that would show she suffered extreme emotional distress. Rule 9(b) does not excuse plaintiff from compliance with Twombly as to the severe emotional distress element of her claim. Plaintiff's first amended complaint contains only a vague allegation that defendant's conduct "caused severe emotional distress to Plaintiff," and federal courts in Oklahoma considering this issue have found that such general allegations do not comply with federal pleading requirements. Robbins Motorsports, LLC v. Nat'l Fire & Marine Ins. Co., 2011 2174911, *4 (E.D. Okla. June 3, 2011);

Peterson v. Grisham, 2008 WL 4363653, *7 (E.D. Okla. Sept. 17, 2008). Plaintiff's intentional infliction of emotional distress claim should be dismissed due to her failure to adequately allege severe emotional distress, but she will be granted leave to file a second amended complaint if she can reallege this claim with sufficient facts to state that she suffered severe emotional distress as a result of defendant's conduct.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Partial Dismissal of Plaintiff's First Amended Complaint, with Brief in Support (Dkt. # 18) is **granted**.

**IT IS FURTHER ORDERED** that plaintiff may file a second amended complaint re-alleging her fraud and intentional infliction of emotional distress claims no later than **August 1, 2011**.

**DATED** this 26th day of July, 2011.

_Claire V Eagan_

CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT